William E. COLBATH, Laureat J. Gagne, Harvey J. Russell, Philip H. Smart, Herbert G. Williford

v.

The UNITED STATES.

No. 399–59.

United States Court of Claims.

Feb. 19, 1965.

Irving Kaplan, Boston, Mass., for plaintiff.

Richard R. Molleur, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

Plaintiffs were classified Civil Service employees with competitive status and were employed at the Portsmouth Naval Shipyard, Portsmouth, New Hampshire, in the Electrical Fittings Inventory Controls Division, hereinafter referred to as E.F.I.C.D. Each of the plaintiffs is a veteran preference eligible. On July 2, 1957, the Secretary of the Navy sent the Naval Shipyard a communication informing it of his decision to disestablish the E.F.I.C.D. facility at Portsmouth pursuant to a program promulgated to create a more efficient and economic system of national defense. A later communication spelled out the details of the action and stated that the E.F.I.C.D. functions would be consolidated with "similar functions currently being performed at the Ships Parts Control Center, Mechanicsburg, Pennsylvania * * *", that the action would permit a reduction of about eighty-six jobs, and that E.F.I.C.D. civilian employees would be accorded transfer-of-function rights as provided for in the Civil Service regulations. Accordingly, on August 6, 1957, the Naval Shipyard issued Information Bulletin No. 40–57 informing all affected employees of the pending transfer to the Ships Parts Control Center at Mechanicsburg, Pennsylvania, hereinafter called S.P.C.C. The procedures, which the Naval Shipyard would take in imple-

menting the consolidation with S.P.C.C., were stated as follows:

"4. All Electrical Fittings Inventory Control Division employees (those employees whose Personnel Action Forms show that they are employed in the Electrical Fittings Inventory Control Division) shall have the right to transfer with the functions. This offer must be made by the Shipyard even if a reduction in force at the receiving activities is planned. If a reduction in force involving the positions identified with the transfer of functions is anticipated, it is not necessary to effect the actual transfer prior to the reduction. For reduction in force purposes, employees identified with the transfer will be considered employees of the receiving activities and consolidated retention registers will be prepared. However, both receiving activities (Ships Parts Control Center and Electronics Supply Office) will process appropriate action or reassign as determined from the consolidated registers. Employees reached for reduction in force action will have reassignment, reemployment and appeal rights as employees of the receiving activities. Employees who cannot be placed at the receiving activities will be separated by reduction in force. Other employees who decline the offer to move with the functions will be separated after a thirty day notice, and the action will be recorded as 'Separation—Unable To Accompany Activity.' Employees separated because they are unable to accompany the activity do not have any rights to reassignment and their names are not entered on the Reemployment Priority List. However, these employees may apply for reinstatement to the Shipyard. Such employees may also apply to the Director, First U.S. Civil Service Region, Boston, Massachusetts, for entry of their names on registers of eligibles. The Commission will give such separated employees priority certifications to vacancies. Employees who cannot accompany the function will be given every consideration to fill existing vacancies for which qualified at this Shipyard."

Shortly thereafter each employee of E.F.I.C.D. was informed of the impending transfer and was requested to indicate whether he would accompany the said transfer. The employees were advised as to the consequences if they were not able to accompany the transfer of functions and were informed of the Navy's desire to aid the non-accompanying employee to find other work whereever possible, even though he had no placement rights at the Naval Shipyard. The employees were fully aware of the total situation and their alternative possibilities.

Before any steps were taken to effectuate the transfers, the defendant gave the affected employees an opportunity to confer with a representative from Mechanicsburg as to their prospective employment at S.P.C.C. The conference was held at the Naval Shipyard on August 26, 1957, when the Assistant Industrial Relations Officer at Mechanicsburg talked with the employees concerning their respective retention rights at Mechanicsburg. We have found that on the basis of a combined retention register, which showed a projection of the employment register at Mechanicsburg as it would appear once the transfer of the E.F.I.C.D. took place, each of the plaintiffs would be entitled to a position at Mechanicsburg at the same grade level which he held at Portsmouth.

Previous to the officer's discussion with the employees, they were informed by Information Bulletin No. 43-57 that the transfer of functions and consolidation were required by reductions in the budget for the Department of Defense. The Commander of the Naval Shipyard also received a letter from the Chief of the Bureau of Ships outlining the procedure to be taken in carrying out the transfer.

The plaintiffs subsequently received a 30-day "notice of intention to separate from Government service because of inability to accompany transfer of activity", since they had chosen not to move to Mechanicsburg in pursuit of their jobs. Plaintiffs exhausted their administrative remedies in seeking relief from this notice to separate. Following a combined hearing at the Naval Shipyard, there was a hearing before the New England Regional Office of the Civil Service Commission, and an appeal to the Civil Service Commission's Board of Appeals and Review. After a thorough investigation by the Civil Service Commission and a full hearing in which an adequate record was developed, the Regional Director issued a decision in which he found: (1) there was a transfer of the E.F.I.C.D. functions to the S.P.C.C. and those functions were the operating activities of the E.F.I.C.D.; (2) plaintiffs were separated only because they declined to accept transfers in a transfer of their functions, and (3) the separations were made in compliance with the applicable law and regulations and were for such cause as would promote the efficiency of the service. This decision was affirmed by the Board of Appeals and Review.

The Navy made extensive efforts to assist plaintiffs in finding other suitable work. All except plaintiff Colbath were rehired at the Naval Shipyard within 2 months to 2 years afterwards. All are still employed at the Naval Shipyard, except plaintiff Colbath, who is now retired. Plaintiffs were not given reduction-in-force rights at the Portsmouth Naval Shipyard under the retention preference regulations of the Civil Service Commission.

In this action to recover back pay, plaintiffs advance several contentions. First, they argue that the disestablishment of the E.F.I.D.C. was not a transfer of function but a consolidation, inasmuch as no new positions were created at S.P.C.C. as a result of the consolidation. The test as to whether there was a transfer of functions is found in the following language of Departmental Circular No. 740 issued by the Civil Service Commission on January 12, 1954:

"The applicability of Section 20.8 (a) depends upon a judgment as to whether, in conjunction with a reduction in force, a function or functions of one organizational entity can be identified as having been transferred to another organizational entity. * * *"

The Civil Service Commission, which is in the best position to interpret its own regulations, found after it had investigated the facts and held a hearing that a transfer of functions did, in fact, occur. Moreover, we have adopted the unchallenged finding of our Trial Commissioner (finding 17), which states that after the transfer of the functions had been accomplished, former E.F.I.D.C. personnel who accompanied the transfer were assigned to the S.P.C.C. Stock Control Division to work exclusively on material transferred from the former E.F.I.D.C. He further found that even though the S.P.C.C. officials contemplated a complete integration of E.F.I.D.C. material with that of the S.P.C.C., it was planned that employees working on the E.F.I.D.C. material would continue to do so in conjunction with similar types of S.P.C.C. material.

Plaintiffs' argument that no transfer occurred because of the consolidation is untenable. Indeed, the legislative history of the Veterans' Preference Act of 1944 shows that the Congress at that time was concerned with transfers made under the Reorganization Act of 1939, 53 Stat. 561. Such reorganizations frequently involved the abolishment of all or part of an agency and the transfer to and consolidation of its functions in another agency in order to effect greater economy and efficiency. Therefore, plaintiffs' first contention falls before the facts.

Plaintiffs' second and principal argument is that Departmental Circular 740 and Supplement No. 1 thereto, which were issued as clarifications of Civil

Service Regulation 20.8, 5 C.F.R. § 12.-306 (1944 Supp.), are invalid and repugnant to the provisions of Section 12 of the Veterans' Preference Act of 1944.[1]

■ The history of the transfer-of-function legislation and the Civil Service Commission's implementation of Section 12 of the Veterans' Preference Act is set forth in McNamara v. Dick, 116 U.S. App.D.C. 271, 323 F.2d 276. As the court there pointed out, there is nothing in the statute or legislative history which refers to transfers of a function within a single agency. The purpose of Section 12 was to protect veterans who were affected by transfers of functions from one agency to another. When the Civil Service Commission promulgated its Regulation 20.8 in 1944, it included the statutory language and dealt only with transfers between agencies. However, by Departmental Circular 740 issued January 12, 1954, the Commission broadened the definition of the "agency" as used in Section 12 to include transfers within an agency. The circular expressly provided that employees who declined offers to move with their functions could be separated for that reason under Part 9 or Part 22 of the Commission's regulations. This matter was further clarified by Supplement No. 1 to Departmental Circular No. 740, issued September 27, 1954. It was entitled "Application of Retention Preference Regulations to a Transfer of Functions" and read as follows:

"A. Management Option as to Methods of Separating Employees Who do not Accompany Activity.
"1. Departmental Circular No. 740 reviewed the minimum considerations which employees must receive when an agency reduces its force in connection with a transfer of functions, and reviewed the rights of such employees in the transferred function. Under such circumstances employees in the transferred function must have an opportunity to follow the function prior to any reduction-in-force action which might otherwise affect them.

"2. The circular provided that employees who do not accept offers to transfer with their function could be separated for this cause under Parts 9 or 22 of the Civil Service Regulations. Some agencies have suggested that the Commission *require* that employees who do not accept offers to transfer with their function, and who cannot be placed in vacancies in other functions, be separated under Parts 9 or 22 of the Regulations. The Commission has carefully considered this suggestion and has determined that to so require would not be in the best interests of agency management, the career system, or the Federal Government as a whole.

"3. We clearly recognize management's prerogative to reassign employees from one position to another and from one place of employment to another. We also recognize that failure by an employee to respond to such management decisions is cause for discharge of the employee. Some transfers of functions involve employees whose services are necessary to the continuity and efficiency of the function during and after its transfer. Under such circumstances, employees have a clear obligation to follow the function. Failure to acknowledge this obligation is acceptable cause for discharge.

"4. On the other hand, an agency may determine that the movement

---

1. Section 12 of the Veterans' Preference Act of 1944, 5 U.S.C. 861, reads in pertinent part as follows:
    "*and provided further*, That when any or all of the functions of any agency are transferred to, or when any agency is replaced by, some other agency, or agencies, all preference employees in the function or functions transferred or in the agency which is replaced by some other agency shall first be transferred to the replacing agency, or agencies, for employment in positions for which they are qualified, before such agency, or agencies, shall appoint additional employees from any other source for such positions."

of employees is not essential to the continuity and efficiency of the transferred function, in which event the agency may prefer to separate employees under Part 20 of the Regulations as part of the concurrent reduction in force. Separation through reduction in force under such circumstances, may be considered preferable for several reasons, e. g., (1) to give career workers opportunities to realize their expectations for continued Federal employment, (2) to give agencies the opportunity to retain the employees in other functions through reduction-in-force reassignments, and (3) to enable the Federal government to retain the skills of trained workers and to foster the concept of a government-wide career service.

"5. For these reasons the Commission has determined that agency management should continue to have optional methods for separating employees who do not accept offers to transfer with their function in a reduction in force. Depending upon individual circumstances such separations may be made for cause under Parts 9 or 22 of the Regulations, or through reduction in force under Part 20 of the Regulations."

■■ In assailing the validity of the above-quoted regulation as a violation of Section 12 of the Veterans' Preference Act, plaintiffs contend that they had the choice of accompanying the transferred function to Mechanicsburg or being granted reduction-in-force rights at Portsmouth.

It is clear that, in situations where employees decline to transfer, the regulations recognize management's option to separate them for cause or to apply the retention preference regulations. In this case, the Navy chose to require the plaintiffs to transfer or be separated. We find nothing in Section 12 of the Veterans' Preference Act which supports plaintiffs' position. Section 12 states, without qualification, that when the functions of an agency are replaced by a transfer to another agency, the preference employees shall first be transferred to the replacing agency. Plaintiffs have pointed to nothing in the legislative history of the Veterans' Preference Act which denies the Civil Service Commission the authority to promulgate Circular 740 and Supplement No. 1 thereto. Since we have not found that the Congress indicated an intention to the contrary, we conclude that these regulations were a valid exercise of the authority delegated to the Commission.

■■ Lastly, plaintiffs contend that even if the pertinent regulations are valid, the action of the Navy in separating plaintiffs from their positions was arbitrary and capricious and was not taken for a cause which would promote the efficiency of the service. They assert that, since they were not needed and were not wanted in Mechanicsburg, there was no reasonable basis for their transfer to that location.

For the purposes of this suit, it is immaterial that no additional positions were created at Mechanicsburg and that plaintiffs' transfers would have required separations of other employees in the S.P.C.C. there. The pertinent fact is that plaintiffs had jobs waiting for them in Mechanicsburg in the same kind of activity and at the same grade and salary. Of the fifteen E.F.I.D.C. employees who accepted transfers to Mechanicsburg, twelve were placed through reduction-in-force procedures instituted at S.P.C.C. and three filled existing vacancies. Sixty-three of the sixty-nine employees affected by the transfer had sufficient retention preference standing to displace S.P.C.C. personnel in their grades. If the remaining six had elected to transfer, they would have had to be considered for placement rights in lower grade positions based upon a review of their personnel records.

Since plaintiffs say they have no quarrel with Section 20.8 of the Civil Service Regulations, it is significant that the regulation provides in part that:

"Before any reduction in force is made in connection with the trans-

fer of any or all of the function of an agency to another continuing agency, all competing employees in positions identified with such function or functions shall be transferred to such continuing agency * * *"

Contrary to plaintiffs' contention, this regulation contemplates that any reduction in force will take place after the physical transfer of the employees to the receiving agency rather than at the location of the discontinued agency. That procedure was followed here.

In essence, plaintiffs challenge the wisdom of a decision made by management within the perimeter of its discretion. In discharging his responsibility, the Secretary of the Navy decided that the function which plaintiffs were performing should be transferred to and integrated with the S.P.C.C. operation, with a corresponding reduction in the number of jobs available at Portsmouth. Having made that determination, the Navy likewise had the discretion to decide that the employees who refused to accept transfers would be separated. It is undisputed that plaintiffs' separations were effected in full compliance with Section 14 of the Veterans' Preference Act. Plaintiffs have failed to present satisfactory evidence of arbitrary action by the Navy in separating plaintiffs or by the Civil Service Commission in its affirming decisions. In the absence of such evidence, this court will not disturb the action of a Government agency taken in the proper exercise of its discretion. Eberlein v. United States, 257 U.S. 82, 42 S. Ct. 12, 66 L.Ed. 140, and Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774.

Anyone who has a family recognizes that hardships may result when the head of the family is put to the choice of moving to another city or relinquishing his position when the Government agency in which he is employed decides to transfer his functions elsewhere. The consequences of such a move may include a departure from surroundings in which the family is happy and well adjusted, a transfer of children to other schools, financial losses, and increased living costs. Substantial as these hardships often are, they do not constitute a type of damage for which this court can grant relief.

For the reasons stated above, plaintiffs are not entitled to recover and their petition is dismissed.