Dureeb, Judge,
delivered the opinion of the court:
Plaintiff, a former civil employee, brings this action to recover earnings alleged to have been lost by his transfer on December 24, 1961 from the Office of Emergency Planning (OEP) to the Department of the Interior (Interior) prior to his removal from Interior by a reduction in force.
Although the parties come to issue on several points on their cross motions for summary judgment, the basic question is whether or not there was a valid and binding transfer of plaintiff’s function from OEP to Interior, which required or justified the transfer of plaintiff to Interior.
In 1953 all functions involved in the stockpiling of strategic defense materials were transferred to the Office of Defense Mobilization (ODM) in the Executive Office of the President.[1]
In 1954 Defense Mobilization Order 1-13, 19 F.B. 7348 directed the Secretary of the Interior to assist O.D.M. in formulating plans for the acquisition and stockpiling of these strategic defense materials.
The ODM became the Office of Civil and Defense Mobilization (OCDM) in 1958 by statute and executive order,[2] and was then authorized to issue Emergency Preparedness Orders.[3] Under this authority, OCDM ordered the Secretary of the Interior to develop, subject to direction and control by OCDM, national emergency and preparedness programs, including the stockpiling of strategic and critical materials.[4]
Congress on August 17,1961, enacted the Executive Office Appropriations Act of 1961, 75 Stat. 342. The Act which reduced the appropriation of OCDM, contained the following limitation:
* * * Provided, That the foregoing amount shall be available for not to exceed 310 positions in the District of Columbia area: * * *
*654 On. September 22, 1961, the name of the OCDM was changed to the Office of Emergency Planning (OEP). 75 Stat. 630.
On November 16,1961, the Director of OEP wrote to the Department of the Interior:
Emergency Preparedness Order No. 7 issued by OCDM on January 10, 1961, pursuant to Eeorganization Plan No. 1 of 1958, Executive Order 10773 of July 1,1958, as amended, and Executive Order 10902 of January 9, 1961, assigns to the Secretary pf the Interior the responsibility for preparing national emergency plans and developing preparedness programs covering electric power, petroleum and gas, solid fuels, and minerals. In this connection I am now prepared to transfer to your Department seven employees and funds for their positions. This is consistent with the President’s intentions of reconstituting the Office of Emergency Planning as a staff agency in the Executive Office.
The Director, Bureau of the Budget is in full accord with this action. Pie has given assurance that the Bureau will give favorable consideration to your Fiscal Year 1963 budget requests for the continuation of these positions. You should, however, advise the Bureau of any additional requirements imposed by this transfer so that the Bureau may provide for them during its ‘mark-up’ process.
I wish to complete the transfer of these positions together with the necessary records, property and available funds, at the earliest possible date. I have, therefore, requested my staff to meet with members of your Department to negotiate this transfer.
A copy of this letter has been sent to the Director, Bureau of the Budget.
Plaintiff was one of the seven employees mentioned in this letter. He was employed in OEP as an Industrial Specialist (Ferro Alloys and Light Metals) GS-1150-13 Y4. In this position plaintiff generally coordinated the development of supply-requirement studies and program proposals on individual ferrous metals, ferro alloys, and light metals. This work was performed under the supervision of a GS-15 branch chief. There was at least one other employee performing the same functions as plaintiff in OEP. Both were in competitive level IA, but plaintiff’s co-worker had been employed longer, and hence had more retention points.
*655 On. November 24, 1961, plaintiff received tbe following-letter from OEP:
Emergency Preparedness Order No. 7 issued by OCDM on January 10, 1961, pursuant to Keorganization Plan No. 1 of 1958, Executive Order 10773 of July 1, 1958, as amended, and Executive Order 10902 of January 9,1961, assigns to the Secretary of Interior the responsibility for preparing national emergency plans and developing preparedness programs covering electric power, petroleum and gas, solid fuels, and minerals.
In view of the above, action is being taken to transfer you to the Department of Interior with no change in position, grade, salary or tenure.
As soon as the effective date of your transfer is determined, you will be notified.
Prior to such transfer, plaintiff was told by the Department of the Interior that there was no existing job for him in Interior, and that the Office of Minerals Mobilization (OMM) in Interior was not enlarging its permanent staff regardless of whether Interior’s mobilization functions were being increased.
On December 8, 1961, the arrangements governing the transfer of plaintiff and the other employees was confirmed by a letter of the OEP, which recited:
You have indicated that you are agreeable to the transfer of seven employees engaged in preparedness programs concerning electric power, petroleum and gas, solid fuels, and minerals to the Department of Interior, as proposed by Mr. Ellis’ letter of November 16, 1961. Accordingly, funds amounting to $34,500 to finance the personal services and benefits of these employees for the period December 24, 1961, through June 30, 1962, will be advanced by Standard Form 1051 from the OEP Salaries and Expenses appropriation. Appropriate office equipment will be transferred with the employees. The Interior Department will assume budgetary responsibility for these positions in F.Y. 1963 and thereafter. Acceptance of the above terms and conditions should be indicated by signature on the original and two copies of this letter.
Sincerely,
William S. Heffelfinger
Accepted, Dec. 15,1961 D. Otis Beasley
Administrative Assistant Secretary
*656 On December 23, 1961, plaintiff was separated from bis position in OEP and received a notification of personnel action describing tbe act as “Separation (Transfer).” He also received a notification of personnel action as of December 24, 1961, transferring bim to the OMM in tbe Department of Interior. Tbe other employee in plaintiff’s competitive group at OEP was similarly transferred.
After plaintiff was sworn in at Interior, be was told by the Director of tbe OMM, in Interior, that there was no permanent, continuing position available for bim; that tbe office was not enlarging its staff; that its budget had been cut; that tbe office was facing a reduction in force and that plaintiff would be put on a special project which would not extend beyond June 30, 1962, but that plaintiff should use his time in looking for another job.
On February 16, 1962, by Executive Order No. 10997 (27 F.E. 1522), the President made the following delegation of duties to the Secretary of the Interior:
SECTION 1. Scope. The Secretary of the Interior (hereinafter referred to as the Secretary) shall prepare national emergency plans and develop preparedness programs covering (1) electric power; (2) petroleum and gas; (3) solid fuels; and (4) minerals. These plans and programs shall be designed to provide a state of readiness in these resource areas with respect to all conditions of national emergency, including attack upon the United States.[5]
By a letter dated May 29, 1962, plaintiff was notified by Interior that he would be separated in a reduction of force in the OMM. At the same time other long-term employees of the OMM were separated because of a lack of funds.
The position plaintiff occupied in the OEP was never reestablished.
*657 Plaintiff then appealed to the Civil Service Commission (C.S.C.) seeking review of the propriety of his transfer from OEP and his separation from Interior.[6]
Plaintiff contends that there was no transfer, within the meaning of the Federal Personnel Manual,[7] of a “clearly identifiable segment” of CEP’s “mission” to Interior with, which plaintiff’s transfer could have been connected because there was no current transfer of function.
Section 12 of the Veterans’ Preference Act of 19M, 58 Stat. 890, 5 U.S.C. § 861, provides in pertinent part:
In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and *658 efficiency ratings: * * * And provided fwther, That when any or all of the functions of any agency are transferred to, or when any agency is replaced by, some other agency, or agencies, all preference employees in the function or functions transferred or in the agency which is replaced by some other agency shall first be transferred to the replaceing [sic] agency, or agencies, for employment in positions for which they are qualified, before such agency, or agencies, shall appoint additional employees from any other source for such positions.
This same contention by plaintiff was dealt with on his appeal to the C.S.C. by the Board of Appeals and Review of the C.S.C. It found that within the purposes of the reorganization of the OEP by Executive Order:
* * * the function assigned to the Department of the Interior was the preparation of national emergency plans and the development of preparedness programs covering electric power, petroleum and gas, solid fuels, and minerals.
This determination by the C.S.C. is supported by substantial evidence. Plaintiff’s job under a GS-13 classification, the preparation of supply requirements studies and proposals on strategic defense materials, was discontinued at OEP after plaintiff’s transfer to Interior, and his former position at OEP was never re-established. There was no GS-13 retention register established by OEP after the transfer to reflect any positions of the kind and nature held by plaintiff. What little coordinating work remained with OEP, incident to the transfer of functions to Interior, was performed by two then existing GS-15 employees.
Prior to the transfer, plaintiff was told by the Department of the Interior that there was no existing job for him in Interior. Nevertheless, plaintiff accepted the transfer in reliance upon representations made by OEP that arrangements had been made between Interior and OEP for completion of a bona fide transfer of his functions. Such a transfer was actually completed.
Plaintiff received an appointment as Industrial Specialist in the Office of Minerals Mobilization (OMM) in Interior, accepted it, and was sworn into this position under a notification of Personnel Action described as “Transfer (Career).”
*659 The record before the C.S.C. on appeal shows that after this transfer to Interior, its Office of Minerals Mobilization performed the function formerly carried out within OEP.
Plaintiff contends that his separation by OEP was an illegal denial of his rights under the Veterans’ Preference Act, 5 U.S.O. § 861, and the Civil Service [Regulations, which provide:
5 C.F.R. § 20.8. Special regulations relating to consolidations and liquidations.
(a) Before any reduction in force is made in connection with the transfer of any or all of the functions of ian agency to another continuing agency, all competing employees in positions identified with such function or functions shall be transferred without change in tenure of appointment * * *
In Colbath v. United States, 169 Ct. Cl. 414, 419, 341 F. 2d, 626 (1965), this court, in dealing with this regulation, stated:
The Civil Service Commission, which is in the best position to interpret its own regulations, found after it had investigated the facts and held a hearing that a transfer of functions did, in fact, occur. * * *
In the present case, the Civil Service Commission made a similar determination:
The Board has concluded that the duties and responsibilities as set forth in the official job sheet of the appellants were of an operating nature, that they pertained to functions assigned to the Department of the Interior and that therefore the determination to transfer the appellants and their positions to the Department of the Interior was consistent with the reorganization.
This determination was supported by substantial evidence and was neither arbitrary nor capricious.[8]
When Congress in the Executive Office Appropriation Act of 1961 (75 Stat. 342), reduced the funds for the OEP with the provision “That the foregoing amount shall be available for not to exceed 310 persons in the District of Columbia area,” in contrast to the 1,600 employees previously in the agency, the OEP had to separate or transfer 80 percent of its Washington employees. Accordingly, OEP decided to *660 transfer the functions of plaintiff’s position. If it had not made this determination, plaintiff would have been removed by reduction in force at OEP in any event, since OEP would have been compelled to abolish plaintiff’s position.
Defendant’s motion for summary judgment is granted; plaintiff’s cross motion is denied and the petition is dismissed.

 Reorganization Plan No. 3 of 1953 (67 Stat. 634).

 Reorganization Plan No. 1 of 1958, issued April 24, 1958, and effective July 1, 1958 (72 Stat. 861) ; Executive Orders No. 10773 issued July 1, 1958 (23 E.R. 6971) and No. 10782 on September 10, 1958).

 Executive Order No. 10902, January 9, 1961 (26 F.R. 217).

 Emergency Preparedness Order No. 7 (26 E.R. 659), January 10, 1961.

 Thereafter by Executive Order No. 11051 (27 F.R. 9683), September 27, 1962, tbe duties of OEP were redefined to make it a small agency witbin the Office of the President. See also 75 Stat. 342, limiting tbe agency to 310 positions. With regard to tbe resources and requirements, this order limited the OEP’s duties as follows:
“Sec. 202. Resources and Requirements. The Director shall provide policy guidance to the heads of Federal agencies having resource mobilization or claimancy responsibilities to assist them in (1) the development and submission of estimated military and foreign as well as industrial and consumer requirements; (2) tbe development of resource supply estimates; and (3) tbe periodic evaluation of requirements estimates in relation to estimates of availability of resources from all sources.”

 Plaintiff appealed first to an Appeals Examining Officer of the C.S.C. and then through the Board of Appeals and Review to the Commissioners, who instructed the Board of Appeals and Review to reopen his case and resolve the question of propriety of his transfer. Eollowing an adverse Board ruling, plaintiff instituted suit in this court and did not again appeal to the Commissioners. This was satisfaction of the requirement that plaintiff exhaust his administrative remedy before coming into this court, Adler v. United States, 134 Ct. Cl. 200, 146 F. Supp. 956 (1956), cert. den. 352 U.S. 894 (1956), inasmuch as the decision on an appeal to the Board of Appeals and Review is final and no further right to appeal exists. 5 C.P.R. § 22.503. See 5 C.E.R. § 22.504 regarding the Commissioners’ discretionary right to reopen a case.

 The Federal Personnel Manual (Chapter 351, Subchapter 3) defines function thus:
“A function is all or a clearly identifiable segment of an agency’s mission (including all the integral parts of that mission), regardless of how it is performed.”
The Manual (in the same Chapter and Subchapter) defines transfer of function thus:
“A transfer of function is the transfer of the performance of a continuing function from one competitive area and its addition to one or more other competitive areas, or the movement of the competitive area in which the function is performed to another commuting area. A function being transferred purely for liquidation is not a continuing function. A function is transferred when it disappears or is discontinued at one location and appears in identifiable form at another location. In contrast, a discontinued function that does not appear at another location is abolished.”
The Manual (in the same Chapter and Subchapter) says:
“In a transfer of function the operation of the function must cease in one competitive area and be carried on in another competitive area. When two different offices perform identical functions and one has a decrease in workload calling for a reduction in force, while the second in a different geographical location has an increase in workload calling for new hiring, there is no transfer of function. However, when the second office takes over an activity it did not have before and which formerly was performed in the first office, a transfer of function occurs. An important determination in eases of this type is whether the functions in the different locations are really identical, although the manner of performance may be different.”

 An expansion on how this court resolves the question of substantial evidence is to be found in Confederated Tribes of the Warm Springs Reservation of Oregon v. United States, ante, p. 184.