Dureee, Judge,
delivered the opinion of the court:
The broad question presented in this case is whether plaintiff’s employment in the career civil service was terminated in such a manner as to entitle her to an immediate annuity and whether there is any reason why she should be denied the annuity, or the alternative recovery of her salary for part of the period since her separation and an annuity for the remainder of that period.
Plaintiff was separated from her position as a clerk at the Bureau of Mines, Department of the Interior, Washington, D.C., on July 19, 1949, under the following circumstances. In March of 1949, plaintiff, who had over 31 years of Government service, was placed in a leave without pay status at her own request to enable her to accompany her husband, who was in poor health, to California. She subse *394 quently requested additional leave without pay through December 30, 1949. In a reply dated June 14,1949, her personnel officer informed her that he could not approve her request since he understood that she did not intend to resume her work at the Bureau of Mines. He did, however, approve additional leave without pay from June 20 through July 19. He further notified her that unless she secured a transfer to another Government position by the latter date, or signified her intention to return to her position with the Bureau of Mines,, steps would be taken to terminate her services, without prejudice to future employment.
Plaintiff did not secure a transfer nor did she signify her intention to return to her position. A personnel action form effecting her resignation at the close of business on July 19, 1949, was thereupon processed giving the following justification for the action:
Mrs. Corrigan has resigned since she is unable to return to duty from approved leave without pay due to the ill health of her husband. The resulting vacancy will be filled.
On being notified of the agency action, Mrs. Corrigan contacted her personnel officer expressing surprise and indicating that she had not resigned nor had she intended to do so. She requested that the agency terminate her as part of a reduction-in-force so that she might become eligible for an immediate annuity, rather than the deferred annuity which she would expect to receive some years in the future.
In October 1949, plaintiff received a copy of an agency response to an inquiry from a United States Senator, which explained the handling of plaintiff’s separation in the following fashion:
Inasmuch as Mrs. Corrigan’s last period of leave without pay from June 20 through July 19 was granted with the knowledge that she would not in all probability return to duty, it did not seem proper to effect an action for her “Separation — Abandonment of position,” which would have been the only alternative action to take, and which would in the event of her reinstatement be considered as a separation for cause, thereby requiring prior approval by the Civil Service Commission.
*395 This letter concluded by saying that the Bureau of Mines had experienced no reduction-in-force as a result of reorganization but that, even had one occurred, Mrs. Corrigan would have been the last person in her position to be separated because of her long period of Government service.
Nothing further occurred in the matter of plaintiff’s separation until November 19,1957, when her attorney forwarded an application for retirement to the Civil Service Commission requesting an immediate annuity commencing on the date of her separation, over eight years earlier. The application for immediate annuity was disallowed by the Retirement Division of the Civil Service Commission which said that regardless of the terminology which* the Bureau of Mines used in describing plaintiff’s separation, it was clear that she was separated for an unauthorized absence. Although the separation was involuntary, under the circumstances it was considered by the Retirement Division to have involved delinquency on the part of the plaintiff.
This determination was appealed to the Board of Appeals and Review which affirmed the denial of annuity. In that appeal, the plaintiff particularly complained that her separation was not in conformity with the provisions of the Lloyd-La Follette Act, 5 U.S.C.’;'652(a). The appellate decision read, in pertinent part:
The Board is not in agreement with the Retirement Division’s conclusion that Mrs. Corrigan’s separation was involuntary and involved delinquency on her part. However, the record is such that it must be concluded that her separation was voluntary since Mrs. Corrigan left her position of her own volition and for personal reasons. In view thereof, there is no basis for a determination that she is entitled to an immediate annuity under the provisions of Section 1(c) of the retirement law in effect at the date of her separation. Accordingly, the action taken in disallowing her application for an immediate aimuity is affirmed.
Plaintiff then appealed to the Commission as a whole which rendered the following decision on September 11, 1959:
The Commissioners have fully reviewed the entire record in this matter. They have carefully considered all representations made in Mrs. Corrigan’s behalf. The Commissioners find, under all the facts and circumstances of this case, that Mrs. Corrigan’s separation was *396 not an involuntary separation within the meaning of Section 1(c) of the Retirement Act of 1930, as amended to February 28,1948, (in effect at the time of the separation) but was, in fact, a voluntary separation for personal reasons regardless of the terminology used by the agency in removing Mrs. Corrigan’s name from the rolls and regardless of the allegation that the agency failed to comply with the Lloyd-La Follette Act or the Commission’s regulations in removing her name from the rolls, and that Mrs. Corrigan is, therefore, not entitled to an immediate annuity under Section 1(c) of the Retirement Act of 1930, as amended to February 28,1948.
The petition asks that the plaintiff be awarded an immediate annuity commencing on the date of her separation or, in the alternative, her salary from the date of her separation to the date on which she made application for the immediate annuity, apparently on the theory that her separation was in violation of the Lloyd-La Follette Act, supra, with the immediate amiuity to commence on the date of the filing of her application therefor.
Initially, we treat the motion to strike that portion of the answer which avers that plaintiff has been receiving a deferred annuity since May 1960. It is true that this is new matter in that the annuity began to be paid between the filing of the petition and the filing of the answer. The Government says that the fact is material and relevant to the question of liability. We do not believe that it is; on the other hand, however, we cannot perceive how the inclusion of this matter in the pleadings could be prejudicial to the plaintiff. Indeed, it seems to us, the present existence of a deferred annuity based on plaintiff’s age in the year 1960 has no bearing whatever on the problem of whether the Government is liable for an immediate annuity based on the involuntary separation of the plaintiff in 1949.
The pertinent portion of the Civil Service Retirement Act of May 29, 1930, as amended,[1] on which plaintiff relies for her immediate annuity is found at 5 U.S.C., § 691(c) (1952 Ed.) :
*397 Any officer or employee to whom this Act applies after having rendered at least twenty-five years of service * * * shall, upon involuntary separation from the service not by removal for cause on charges of misconduct or delinquency, be paid an immediate life annuity computed as provided in section 698 of this title reduced by one-fourth of 1 per centum for each full month such officer or employee is under the age of sixty years. This subsection shall become effective as of July 1,1945.
It will be noted that if plaintiff’s separation was voluntary or if it was for cause on charges of misconduct or delinquency she fails to qualify for the immediate annuity described in the statute.
We are of the opinion that the Civil Service Commissioners correctly analyzed plaintiff’s position when it determined that her separation was not involuntary within the meaning of the act. Plaintiff was informed on June 14,1949, that she was to be given a specified additional period of leave without pay and that if she had not communicated her intention to return to her position or to secure other Government employment by that date, steps would be taken to effect her termination. Thereupon she contacted her personnel officer and requested him to effect the separation in a different manner, at the same time indicating that she had not intended to resign. Her separation for resignation was reaffirmed shortly thereafter when she was furnished with a copy of the letter of October 12, 1949, explaining that no reduction-in-force had occurred in her office and that the only alternative manner of separation was one which would have been prejudicial to her.
To this letter plaintiff made no reply or no protest. The matter was not brought to the attention of the Civil Service Commission for over eight years, and when the Commission finally was contacted no claim for reinstatement was made. The Federal Personnel Manual provisions in effect at the time of plaintiff’s separation[2] indicate that a resignation need not be in writing and that if an employee contends that he or she has not abandoned a position reinstatement must follow with any subsequent separation to be accomplished by removal action if warranted.
*398 This is not principally an action for back pay, but this court has held that a plaintiff must be willing and able to perform his job in order to recover pay for a violation of the Lloyd-La Follette or Veterans Preference Acts. Armand v. United States, 136 Ct. Cl. 339, 342 (1956). Because of her husband’s health, plaintiff was either unable or unwilling to perform her duties. We think that an analogy must be drawn, the conclusion of which is that regardless of the descriptive term applied to it her separation was voluntary. Her inaction in the face of the October 12, 1949 letter reiterating the agency action must, we think, be taken as acquiescence in that action. This is the more probable since the agency had informed her that the action was taken as an alternative to separation for abandonment of position which action might have been prejudicial to her reemployment rights.
The defendant has raised the statute of limitations as a defense to this action. Since this is a claim for an immediate amiuity, the Government believes that the cause of action accrued the month following plaintiff’s separation, a date more than six years prior to the date of the petition. Our statute of limitations is jurisdictional and ordinarly presents a threshold question. 28 U.S.C., § 2501. It can be interpreted to preclude our consideration of the merits of this problem. This court has, however, allowed recovery in a number of cases in which more than six years had elapsed between the accrual of the cause of action and the filing of the petition. Primarily, this has occurred in the so-called “continuing claims” for military longevity retired pay on the theory that a new cause of action accrues for each and every period which passes without the claimant receiving his pay. E.g., Roberts v. United States, 151 Ct. Cl. 360. Such cases ordinarily involve only an interpretation of the applicable law and require no findings of disputed fact. It can readily be seen that an argument based on “continuing claim” might be made in this case to relax application of the statute of limitations.
As we stated above, we are of the opinion that the plaintiff states no claim under the applicable statute. Consequently, we will defer decision on the problem of the statute of *399 limitations to a more propitious case. The plaintiff’s motion to strike and for summary judgment is denied and the defendant’s motion for summary judgment is granted. The petition will be dismissed.
It is so ordered.
Fahy, Circuit Judge, sitting by designation; Laramore, Judge; MaddeN, Judge, and JoNes, Chief Judge, concur.

 Public Law 426, 80th Cong., 2d Sess., 62 Stat. 48. The pertinent provision of this act bore an effective date of July 1, 1947; It was changed to July 1, 1945 by Public Law 267, 81st Cong., 1st Sess., 63 Stat. 663.

 S-l-7 and S-l-10, Table 2, Federal Personnel Manual, May 2, 1949.