Bernard G. BROWNING

v.

The UNITED STATES.

No. 75–65.

United States Court of Claims.
March 17, 1967.

Charles F. Wheatley, Jr., Washington, D. C., attorney of record, for plaintiff. Billy Dwight Perry, McCarty & Wheatley, Washington, D. C., and W. C. Whitlow, Fulton, Mo., of counsel.

Isaac D. Benkin, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Richard Arens with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on June 9, 1966. Exceptions to the commissioner's findings, opinion and recommended conclusion of law were filed by defendant. The case was submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, with

slight modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is therefore entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 47(c).

### OPINION OF COMMISSIONER*

ARENS, Commissioner:

The principal question presented by this case is whether plaintiff's separation in February 1963, from his employment as agricultural engineer in the Soil Conservation Service (hereinafter referred to as the Service), an agency of the United States Department of Agriculture was "involuntary" within the meaning of 5 U.S.C. § 2256(d) (1964 edition) relating to retirement, which reads:

(d) Any employee who completes twenty-five years of service or who attains the age of fifty years and completes twenty years of service shall upon involuntary separation from the service not by removal for cause on charges of misconduct or delinquency, be paid a reduced annuity computed as provided in section 2259 of this title.

The reason for plaintiff's separation was his failure to accept a transfer from the Fulton, Missouri to the Springfield, Missouri office of the Service at the same position and grade (GS–9). Plaintiff contends that at the time of his separation he was entitled to an immediate annuity because his separation was involuntary. Defendant admits that at the time of his separation plaintiff had more than 25 years of Government service and was over fifty years of age, and that he was not removed for cause on charges of misconduct or delinquency. Defendant contends, however, that plaintiff's discharge for failure to accept the transfer was a voluntary separation and that he, accordingly, failed to qualify for the immediate annuity.

The essential facts relating to plaintiff's separation, which are detailed in the accompanying findings, may be capsuled as follows:

Plaintiff, a non-veteran, a qualified registered land surveyor and professional engineer, at all pertinent times, received satisfactory performance ratings in his work at the Fulton, Missouri office of the Soil Conservation Service where he had been employed as agricultural engineer since January 1954.

In December 1957, plaintiff was granted approval by Mr. Oscar Bruce, the State Conservationist [head of the Service in Missouri] to engage, with certain conditions, in private survey work during his annual leave time, and plaintiff, thereafter, engaged in profitable private work in the vicinity of Fulton, Missouri, under the name of Bernard Browning, Professional Engineer and Land Surveyor.

In May 1962, Mr. Howard Jackson, who succeeded Mr. Bruce as state conservationist in Missouri, requested a report from all employees of the Service regarding their outside activities which were within the scope of a regulation which had been issued on the subject by the Department of Agriculture; and in June 1962, plaintiff submitted a memorandum regarding his private survey work. Shortly thereafter the position of area engineer, GS–9, was established with headquarters at Springfield [about 160 miles from Fulton which is located in central Missouri] to serve areas 6 and 7 which encompassed most of the southern part of the state. A week or so later Mr. Jackson sent a memorandum to plaintiff's immediate supervisor, which plaintiff was permitted to read to the effect that although plaintiff had made an effort to follow the general intent of the authorization given to him in 1957 to engage in the private survey work, it was diverting his attention from the Service work, and he should discontinue it within 90 days.

---

* The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

Over the course of the next several months, plaintiff conferred or exchanged memoranda with his superiors regarding both his private survey work and a proposal made to him by Mr. Jackson that he accept a transfer to the newly created position in Springfield. Plaintiff advised his supervisor that he planned to discontinue active management of the private survey work, but to retain controlling interest in the business. He was never told whether this would be agreeable to the Service. Plaintiff also advised his superiors that he could not accept the transfer for various reasons, including the financial sacrifice involved in the move and his wife's health. Plaintiff's wife suffered from a nervous condition for which she was recurrently under the care of a physician who expressed the opinion that it would be to her best interest to remain in Fulton.

In January 1963, plaintiff was notified that if he did not accept the transfer and did not elect to resign, he would be separated. On February 3, 1963, he was separated from the Service for failure to accept a new assignment; and on the same date he submitted an application for an immediate discontinued-service annuity. Thereafter, the Bureau of Retirement and Insurance advised plaintiff that his separation must be considered voluntary for retirement purposes and that his application for a discontinued-service annuity had been disallowed; and this decision of the Bureau was subsequently affirmed by the Board of Appeals and Review of the Civil Service Commission.

In resolving the legal question as to whether plaintiff's separation was "involuntary" within the meaning of the above quoted statute, it is pertinent to note at the outset that although plaintiff may have believed that the transfer order was because of his private survey work, the evidence does not establish that the transfer order was improper or improperly motivated. (Finding 16(a)).

Keener v. United States, 165 Ct.Cl. 334, 339 (1964). It is obvious, moreover, that his separation, admittedly not "for cause on charges of misconduct or delinquency" was against the will and without the consent of plaintiff. (Finding 16(b)). Within the commonly accepted and dictionary definition of "involuntary," that is, not of one's own free will,[1] it is clear that plaintiff's separation was involuntary. If he had wanted to be separated, he would have simply resigned, as suggested by his superiors. He did not, however, want to be separated, nor did he want to be transferred; but he did want to remain in his position in Fulton. An appraisal of the facts in the instant case by the yardstick of the literal language of the statute also compels the conclusion that plaintiff's separation was involuntary. In Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607 (1944), l. c. 618, 64 S.Ct. 1215, l. c. 1221, 88 L.Ed. 1488, Mr. Justice Frankfurter wrote:

> * * * After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him.

Defendant contends, however, that the legislative history of the statute establishes that the word "involuntary" should apply only to the type of situation which caused the enactment of the original (1922) version of the statute, namely, to a situation in which employees of the Government lose their jobs by a reduction-in-force or a similar situation, and not to a situation in which an employee is separated because some personal circumstance precludes his acceptance of a new assignment. There can be little doubt that the original version of the statute which came into the retirement law with the Act of September 22, 1922,[2] was intended as a measure to relieve certain Government employees who lost their jobs as a result of the 1921 Confer-

---

1. Webster's New Collegiate Dictionary, 1959 edition.

2. 42 Stat. 1047.

ence on the Limitation of Armaments. However, this does not mean that the plain language of the statute need necessarily be restricted in its application to situations similar to that which impelled the enactment of the original version, nor has it been so restricted by the administrative regulations applying the statute. H. B. Zachry Co. v. United States, 344 F.2d 352, 170 Ct.Cl. 115 (1965). The Administrative Regulations of the Department of Agriculture, ch. 24, § 1.5, entitled Separation—Failure To Accept New Assignment, which were in effect at the time of plaintiff's separation read:

> 810. *Purpose.* The purpose of this section is to provide policy and procedures for the separation and placement assistance of employees who, because of personal reasons are unable to accept a new assignment directed by the agency.

> 811. *Policy.* It is the policy of the Department to place elsewhere, whenever possible, employees who are unable to accept a new assignment directed by the agency. When this is not possible, and the employee does not resign, it will be necessary to effect his separation.

> \*    \*    \*    \*    \*    \*

> 816. *Rights Upon Separation.* Separations for failure to accept new assignment are considered involuntary for retirement purposes.

Defendant argues that the foregoing regulations of the Department of Agriculture conflict with regulations on the subject by the Civil Service Commission, and that since only the Commission has the power under appropriate statutes to issue regulations with respect to eligibility for civil service retirement benefits, its regulations should prevail. The weakness in defendant's argument is that although the above quoted regulations of the Department of Agriculture fit plaintiff's situation exactly, the Commission regulations do not categorically preclude the same end result, namely, for plaintiff's separation to be deemed involuntary. Applicable regulations of the Civil Service Commission read in parts as follows:

### MEANING OF INVOLUNTARY SEPARATION

Whether a separation is involuntary depends upon all the facts in a particular case; it is the true substance of the action which governs rather than the methods followed or the terminology used.

The term "involuntary separation" means any separation against the will and without the consent of the employee, other than for cause on charges of misconduct or delinquency. Examples are: reduction in force; abolishment of position; lack of funds; expiration of term of office; liquidation of an office or of an entire agency; inefficiency (unless due to the employee's misconduct); disability (provided the separation action is initiated by the agency); separation during probation because of failure to qualify; or separation of an indefinite or temporary employee under the Commission's instructions for displacement (section 9.105 of the Regulations).

A separation under one of the cited circumstances is considered involuntary for retirement purposes. If an employee, after receiving notice that he will be separated for any such reason, resigns before the scheduled separation date, his separation is involuntary. If the notice also contains an offer, in lieu of separation, of promotion, reassignment, or demotion to another available position, the employee's resignation in lieu of accepting such other position will constitute an involuntary separation. However, if the employee resigns before receiving official separation notice or after he enters on duty in the new position, the separation is voluntary.

\*    \*    \*    \*    \*    \*

The right of an administrative officer to direct reassignment of an employee for the good of the service is

well established. Refusal by an employee to accept such reassignment ordinarily results in removal for cause or voluntary resignation. * * *

When the location of an office or unit is changed because of decentralization, or because of the transfer of the functions of an organizational unit, and an employee is separated or resigns solely because he is unable for family or personal reasons to accompany the office or unit to its new location, the action is considered involuntary. However, in order for such action to be considered involuntary, the change in the location of the office or unit must be such that the employee would be compelled to change his place of residence in order to continue in employment. If the new location is within reasonable and ordinary commuting distance from the home of the employee and he fails to accompany the office or unit to the new location, his separation would not be considered involuntary.

The only specific reference in the Commission regulations to a situation in which an employee refuses to accept a reassignment is the statement that such refusal ordinarily results in removal for cause or voluntary resignation, neither of which occurred in the instant case. The tone of the regulations is set by the opening language which prescribes that in determining whether a separation is involuntary, it is the true substance of the action which governs rather than the methods followed or the terminology used, and that the term "involuntary separation" means any separation against the will and without the consent of the employee. Although the examples given do not include a refusal to accept a reassignment, they are obviously not intended as an exclusive list of situations in which a separation may be deemed involuntary. It is pertinent to note, moreover, that under the Commission regulations when the location of an office is changed and an employee is separated solely because he is unable for family or personal reasons to accompany the office to the new location, the action is considered involuntary.

Colbath v. United States, 169 Ct.Cl. 414, 341 F.2d 626 (1965), cited by defendant is inapposite. The employees in *Colbath* claimed back pay on the grounds that their dismissals for failure to accept transfers in the Navy Department violated their rights under the Veterans' Preference Act of 1944 and were arbitrary and capricious. Although this court sustained the dismissals, the issue as to the nature of the dismissals, posed in the instant case, was not considered. Defendant also cites Corrigan v. United States, 153 Ct.Cl. 392 (1961), which is clearly factually distinguishable from the case at bar. The plaintiff in *Corrigan* took extended leave from her position as a clerk at the Bureau of Mines of the Department of the Interior in order to accompany her husband, who was in poor health, to California. She was not transferred; nor did she signify her intention to return to her position at the end of her leave period, although she was requested to do so by the agency. For all practical purposes, she abandoned her position, and she was deemed by the agency to have resigned. Eight years after her separation she applied to the Civil Service Commission for an immediate annuity commencing on the date of her separation. This court sustained the finding of the Civil Service Commission that her separation was not an involuntary separation and that she was not entitled to an immediate annuity.

In the instant case, we observe a plaintiff who wanted to continue the employment in which he was engaged, and who felt he could not accept the transfer to another city because of personal reasons, including the health of his wife. The Service was empowered to remove him for cause but it chose not to do so. He did not elect to resign and thereby manifest the voluntary nature of his separation. The regulations of his agency, the Department of Agriculture, clearly prescribe that in such a situation, the separation shall be considered involuntary for retirement purposes. The regu-

lations of the Civil Service Commission at least do not prohibit such result.

It is concluded that plaintiff is entitled to recover, with the determination of the amount of recovery to be reserved for further proceedings under Rule 47(c).