**John H. PATTERSON**

v.

**The UNITED STATES.**

**No. 197–68.**

United States Court of Claims.

Jan. 22, 1971.

———————

Thomas M. Gittings, Jr., Washington, D.C., attorney of record, for plaintiff.

LeRoy Southmayd, Jr., Washington, D.C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COL-LINS, SKELTON and NICHOLS, Judges.

**ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

DURFEE, Judge.

Plaintiff had been continuously employed by several agencies of the United States Government from September 30, 1940 to and including August 31, 1966 (except for the period from March 13, 1945 to May 18, 1948 during which plaintiff served on active duty in the United States Marine Corps). His agency employment had been related to the field of quality assurance engineering and he had attained the position of General Commodities Quality Control Director, Grade GS–1901–15, with the Detroit Procurement District, United States Army, Detroit, Michigan.

In 1964, the Department of Defense announced a plan for the centralization and consolidation of the Contract Administration Services of the Department of the Army, Navy and Air Force into the Defense Supply Agency, which would entail, in part, the abolition of the Detroit Procurement District. Pursuant to this reorganization, plaintiff received notice on February 11, 1965 that the functions of his position were being transferred to the Defense Supply Agency, DCASR, Detroit, and that he had transfer of function rights. As part of the job description accompanying the offer, plaintiff was informed that he henceforth would be subject to rotational assignment. This condition was objectionable to plaintiff who desired not to leave the Detroit area for personal and family reasons. Plaintiff had, over a period of years, established close ties with his community from which he did not wish to disengage. He did not want to interrupt the schooling of his three children who were still living at home, nor did he want to be separated from his family for extended periods. In addition, plaintiff and his wife were responsible for the care of the wife's

mother who resided in the Detroit area, and who required constant medical attention. For these reasons, plaintiff conditionally agreed to accept the tendered position if the rotational assignment could be limited within the Detroit region, or if any assignment without the region was on a temporary basis with appropriate travel compensation. Plaintiff's counter-offer was rejected, and inasmuch as he had not yet completed 25 years of service nor reached the age of 50 years he was forced to agree to accept the original offer. However, due to a proposed investigation of the Detroit Procurement District, the effective date of plaintiff's transfer was ultimately extended to July 24, 1966. During these repeated extensions, plaintiff completed 25 years of creditable Federal service.

At the time of plaintiff's separation, 5 U.S.C. § 2256(d) (1964 ed.) provided:

> Twenty-five years of service or fifty years of age and twenty years of service.

> Any employee who completes twenty-five years of service or who attains the age of fifty years and completes twenty years of service shall upon involuntary separation from the service not by removal for cause on charges of misconduct or delinquency, be paid a reduced annuity * * *.

This statutory provision was revised by the Act of September 6, 1966, Pub.L. No. 89–554, 80 Stat. 378, and has become 5 U.S.C. § 8336(d) (Supp. V, 1965–69) which reads as follows:

> An employee who is involuntarily separated from the service, except by removal for cause on charges of misconduct or delinquency, after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to a reduced annuity.

This phrase "involuntary separation," as it relates to the above provisions, has been administratively defined by the Civil Service Commission (hereinafter CSC) in Subchapter S11 of the Federal Personnel Manual Supplement (hereinafter Manual) 831–1 (issued on May 11, 1964) which provides in pertinent part:

> S–11–2. *Meaning of involuntary separation*

> a. Definition of term. The term "involuntary separation" means any separation against the will and without the consent of the employee, other than separation for cause on charges of misconduct or delinquency. Examples are: reduction in force; abolishment of position; lack of funds; expiration of term of office; liquidation of an office or of an entire agency; inefficiency (unless due to the employee's misconduct); disability (provided the separation action is initiated by the agency); separation during probation because of failure to qualify; or separation of an indefinite or temporary employee under the Commission's instructions for displacement (section 316.501 of the regulations). However, note that *whether a separation is involuntary depends upon all the facts in a particular case; it is the true substance of the action which governs rather than the methods followed or the terminology used.* The responsibility for determining whether a separation is involuntary for retirement purposes rests with the Commission. [Emphasis supplied.]

> * * * * * *

> c. Resignation in lieu of involuntary separation. If an employee, after receiving notice that he will be separated under any of the circumstances cited in paragraph a. above, resigns before the scheduled separation date, his separation is involuntary. If the notice contains an offer—in lieu of separation—of promotion, reassignment, or demotion to another available position, the employee's resignation in lieu of accepting such other position also constitutes an involuntary separation. However, *if the employee resigns before receiving official separation notice or after he enters on duty in the new position, the separation is voluntary.* [Emphasis supplied.]

\*   \*   \*   \*   \*   \*

e. Change in location of employment. When the location of an office or unit is changed because of centralization, or because of the transfer of the functions of an organizational unit, and an employee is separated or resigns solely because he is unable for family or personal reasons to accompany the office or unit to its new location, the action is considered involuntary. However, in order for such action to be considered involuntary, the change in the location of the office or unit must be such that the employee would be compelled to change his place of residence in order to continue in employment. If the new location is within reasonable and ordinary commuting distance from the home of the employee and he fails to accompany the office or unit to the new location, his separation is not considered involuntary.

Upon inquiring of the Bureau of Retirement and Insurance (hereinafter Bureau) of the CSC whether he would qualify for a discontinued service annuity under the aforementioned statute and regulations if he refused the new position offered, plaintiff was informed that although an offer of assignment in accordance with a functional transfer could give rise to an involuntary separation if a change in residence was required, this element was not present in plaintiff's case. Hence, the Bureau concluded that declination of the offer would result in a voluntary separation for retirement purposes which could preclude the award of the discontinued service annuity. The Bureau's determination was reconfirmed by the Director.

On July 18, 1966, plaintiff formally rejected the offer of transfer and submitted a written request for the claimed annuity. On August 31, 1966 plaintiff was separated from Federal employment with 25 years and 11 months of creditable service for retirement purposes. Plaintiff's application for the annuity was denied by the Bureau and upon timely appeal, this decision was af-

firmed by the Board of Appeals and Review (hereinafter Board) of the CSC. The Board reasoned that plaintiff's immediate relocation would be within the same commuting area, requiring no change in residence, and that plaintiff's rights were to be determined on the basis of existing facts rather than on a future contingency which may or may not occur. Ultimately, the Board's decision was affirmed on June 8, 1967 by the Commissioners of the CSC.

The narrow issue before this court is whether plaintiff's separation from Federal service was voluntary or involuntary for retirement purposes.

Plaintiff argues that consideration of all the facts in this particular case, as required by the Manual, leads to the inescapable conclusion that "the true substance of the action" was an involuntary separation. We agree. In support of this position, plaintiff cites Browning v. United States, 373 F.2d 915, 179 Ct.Cl. 439 (1967). In *Browning, supra,* plaintiff served for more than 25 years as an agricultural engineer in Fulton, Missouri. Plaintiff's functions were transferred to a position newly created in Springfield, Missouri, which was 160 miles from plaintiff's home in Fulton, and he was offered a transfer at the same grade of pay. As here, plaintiff was forced to decline the offer for family and personal reasons, including his interests in a private surveying firm based in Fulton, and the state of his wife's health which necessitated constant medical attention due to a nervous condition. Subsequently, plaintiff was separated from Federal Service, and the Bureau advised him that the separation was considered voluntary for retirement purposes which precluded payment of the discontinued service annuity. The court was faced with the identical task of determining whether plaintiff's separation was voluntary or involuntary for retirement purposes. In allowing plaintiff to recover, the court stated:

It is obvious, moreover, that his separation, admittedly not "for cause on charges of misconduct or delinquency"

was against the will and without the consent of plaintiff. * * *. Within the commonly accepted and dictionary definition of "involuntary," that is, not of one's own free will, it is clear that plaintiff's separation was involuntary. If he had wanted to be separated, he would have simply resigned, * * *. An appraisal of the facts in the instant case by the yardstick of the literal language of the statute also compels the conclusion that plaintiff's separation was involuntary. In Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607 (1944), l.c. 618, 64 S.Ct. 1215, l.c. 1221, 88 L.Ed. 1488, Mr. Justice Frankfurter wrote:

> * * * After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him. *Browning, supra*, 373 F.2d at 917, 179 Ct.Cl. at 443.

The major difference, of course, between *Browning* and the instant case is the fact that, upon acceptance of the offer, plaintiff in *Browning*, would have been immediately required to change his residence whereas, here, plaintiff's claim relies, to a certain extent, upon the occurrence of a future event, *i.e.*, a rotational relocation to an area other than Detroit. Defendant would have us interpret the CSC regulations as relating only to an immediate change of residence. However, we have determined that a narrow construction such as that advanced by defendant would not be consonant with our past decisions nor would it render justice in this case. In this regard, the court's interpretation of the identical CSC regulations in *Browning* is apposite:

> The tone of the regulations is set by the opening language which prescribes that in determining whether a separation is involuntary, it is the true substance of the action which governs rather than the methods followed or the terminology used, and that the term "involuntary separation" means any separation against the will and without the consent of the employee. *Browning, supra*, 373 F.2d at 919, 179 Ct.Cl. at 446.

Certainly, plaintiff's separation from service was against his will. He was content with his position in Detroit and there is no indication in the record that he would have voluntarily separated himself but for the circumstances heretofore described. On the contrary, plaintiff manifested his willingness to accept a transfer as long as he was able to maintain his close family and community ties with the Detroit area.

Defendant argues that since plaintiff's new position would not result in an immediate change of residence, plaintiff was required to wait until he was, in fact, rotated, and that any separation prior to that event was voluntary. However, plaintiff would have absolutely forfeited his right to the discontinued service annuity had he followed that course of action. Subchapter S11, § 2(c) specifically categorizes any separation *after* entering upon the new duty as voluntary for retirement purposes.

Further we cannot conclude, as defendant intimates, that the possibility of relocation was remote. On January 15, 1965, Employee Information Letter No. 4 was issued to Department of Defense Contract Administration Service employees identified for transfer to the Defense Supply Agency. The following paragraph described the proposed working conditions for employees, such as plaintiff, who occupied higher grade level positions:

> 5. For those who aspire to fill higher level positions, it will be necessary that they be mobile. We will have a program of rotational assignment, occupational and/or geographic. Through such a program we can enhance the executive and managerial proficiency and effectiveness of the work force; provide greater career development and promotional *opportunities*; and provide exchange of infor-

mation and knowledge between the using and servicing organization.

Thus, it is obvious that rotational assignment was not only a required aspect of the new employment but also, in the eyes of the Federal service, a desirable one.

Defendant makes the further argument that plaintiff could have been reassigned during his former employment with the Detroit Procurement District at any time. However, under Subchapter S11, § 2(é) of the Manual, plaintiff would have been *involuntarily separated* if he had refused the reassignment for the identical reasons now advanced inasmuch as they constitute valid personal and family obligations. We can discern no persuasive reason why a more inflexible and inherently unjust standard should now be applied which would coerce plaintiff into a waiver of rights without resulting benefit. We refuse to construe these regulations as requiring such contradictory results. Instead, we believe it was precisely to prevent this type of injustice that the first paragraph of Subchapter S11, § 2 contains the admonition to consider all the facts in a particular case in order to enable the true substance of the action to emerge as the determinative factor. In this case, it is significant that plaintiff could have been rotated one day, one week, one month, etc., after entering upon the new duty.

In sum, we consider this case a logical extension of the spirit and principle of *Browning*. We believe that an individual who accepts Federal employment does not contemplate rotational assignment, occupational and/or geographic, unless the job description so specifies.

Accordingly, we hold that a Federal employee, who is forced to reject an offer of transfer of function because family and personal reasons make a newly

included rotational assignment requirement objectionable, is involuntarily separated from Federal service for retirement purposes. It follows, of course, that plaintiff is entitled to the discontinued service annuity, under 5 U.S.C. § 2256(d), since he has completed more than 25 years of service.

As we have already decided that plaintiff was involuntarily separated, we need not consider in depth, plaintiff's alternative argument which is that plaintiff's original position with the Detroit Procurement District was terminated rather than transferred, and that an entirely new position was then created within the Defense Supply Agency which involved new functions and added responsibilities. Suffice it to say that an offer of reassignment and transfer of function should not alter the conditions under which the employee serves. That is to say, the newly created position should not involve an objectionable condition of employment such as rotational assignment, which the employee cannot accept for personal or family reasons. A position which offers geographical security and allows a family to "lay down roots" is by no means essentially the same as one which contemplates extensive travel and relocation and, consequently, requires all members of the family to be mobile.

Finally, we note that plaintiff was able subsequently to secure reemployment with the Federal service on March 26, 1968. Hence, this claim is limited to the period between September 1, 1966 and March 25, 1968.

Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross motion for summary judgment is denied. Judgment is entered for plaintiff with the amount to be determined pursuant to Rule 131(c).