Raymond F. PAULEY

v.

The UNITED STATES.

No. 142–68.

United States Court of Claims.

April 16, 1971.

Willard J. Lassers, Chicago, Ill., attorney of record, for plaintiff. Alex Elson, Aaron S. Wolff, and Elson, Lassers & Wolff, Chicago, Ill., of counsel.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge:

Plaintiff, a former employee of the Department of Agriculture, is suing to recover a reduced annuity under section 6 (d) of the Civil Service Retirement Act, 5 U.S.C. § 8336(d) (Supp. II, 1965–66):

> An employee who is involuntarily separated from the service, except by removal for cause on charges of misconduct or delinquency, after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to a reduced annuity.

The Government defends on the single ground that plaintiff was removed "for cause on charges of misconduct or delinquency" and is therefore disqualified.

The facts are as follows: Plaintiff was serving as Regional Inspector General (grade 15) in Chicago when, on May 12, 1965, he was ordered by the Inspector

General to report to Washington, D. C., for a temporary duty assignment of indefinite duration. At the same time he was informed that there would be an investigation of his administration of the Midwest region.

Plaintiff was retained on temporary assignment for the remainder of 1965. On October 7, 1965, he was informed that the investigation of his administration of the Midwest region had failed to produce evidence which would warrant disciplinary action of any kind, and he was also notified that he would be permanently reassigned from his position in Chicago to the newly created position of Assistant to the Assistant Inspector General in Washington. Plaintiff immediately protested, setting forth personal and family reasons why he could not accept a reassignment to Washington. The protest was to no avail, however, for, on October 24, 1965, plaintiff was permanently reassigned to the Washington position. On December 27, 1965, plaintiff was officially notified to report to his new position on January 5, 1966.

On January 3, 1966, plaintiff advised the Inspector General in writing that for compelling personal and family reasons he refused to accept the reassignment.[1]

1. Plaintiff's letter, containing his reasons for desiring to remain in Chicago, was as follows:

"I have just received instructions from the Executive Assistant's office stating for the first time that I am to report for permanent duty in Washington, D. C., on the specific date of January 5, 1966.

"However, as I indicated to you earlier, I am unable to accept this reassignment to a new duty station without enormous hardship to myself and my family. I have lived all my life in the Chicago area (except for overseas duty with the Air Force and Foreign Economic Administration from 1941 to 1946) and thus my family and I have established firm and deep roots here which we could not sever in the twilight of my career without suffering intolerable mental anguish, disruption of family and great financial loss. Some of the factors involved are listed below, but in no particular order.

"1. The overseas duty mentioned above was the direct cause for dissolution of my first marriage. The three children by that marriage were quite young at the time, and therefore custody was given to my former wife. Although visitation rights were excellent, my relationship with the children necessarily became somewhat tenuous, particularly in view of the extensive travel required in my Federal employment. Nevertheless, I love those children dearly, and if I moved to Washington I would lose contact with them almost entirely, causing me great mental and emotional suffering.

"2. My present wife is a native of Chicago and all her relatives and friends live here. She is most gravely opposed to moving to Washington. If I forced her to move against her will, I am certain our family life would become quite unhappy. On the other hand, if I left her and the children and went to Washington alone, I am certain our marriage would break up in the same manner as my first marriage, caused by service with the Federal Government.

"3. The three children by my second marriage are 7, 12 and 14 years of age. They have close friends here, and are in a virtual panic at the thought of moving, objecting most vociferously. While they would probably adjust to the move eventually, there would be much unhappiness in our family in the interim.

"4. We built a new home here in Mundelein some three years ago when commuter service to Chicago was being provided by the North Shore Electric Line. Inconceivably, the ICC in Washington authorized the line to go out of business. This knocked the bottom out of the real estate market here. Two local brokers, upon request for appraisal, have advised me that we would lose about $10,000 upon resale. We cannot afford this large financial loss, particularly as we are sure the market price of our home will return to its true value as the area continues to grow.

"5. Most of my relatives and friends live in the Chicago area. In addition, I have many fraternal, social and financial interests here. On the other hand, I have only a limited number of acquaintances and very few close friends in Washington. Thus, if I were to move to Washington, this would result not only in financial losses, but a virtual cessation of my social and cultural life, leading to a barren existence.

Plaintiff did not report as directed on January 5. On February 21, 1966, he was notified that he was absent without leave from his new duty station, that he was charged with "failure to accept transfer and reassignment," and that the Department of Agriculture proposed to remove him from his new position. Plaintiff replied to the charge orally and in writing.

On December 8, 1966, plaintiff was officially notified that the charge against him had been fully sustained. It was ordered that he be removed from employment effective December 16, 1966. The removal action was sustained by the Civil Service Commission, Chicago region and by the Board of Appeals and Review. Plaintiff's attempt in federal district court to obtain reinstatement failed, and the action of the district court was sustained by the seventh circuit. Pauley v. United States, 419 F.2d 1061 (7th Cir. 1969).

In this court plaintiff has abandoned his contention that his removal was illegal and confines his claim to the aforementioned annuity. His application for the annuity was denied by the Civil Service Commission's Bureau of Retirement Insurance and the Bureau's denial was affirmed by the Board of Appeals and Review.

The question in this case is whether plaintiff's separation was a "removal for cause on charges of misconduct or delinquency." For the answer we look to applicable regulations of the Civil Service Commission and the Department of Agriculture.

In the parlance of federal personnel regulations an "involuntary separation" is one which is "against the will and without the consent of the employee, other than separation for cause on charges of misconduct or delinquency." Federal Personnel Manual Supp. 831–1, S11–2a (Oct. 28, 1966). Therefore, any employee who is "involuntarily separated" within the meaning of the regulations meets the qualifications for an immediate annuity under 5 U.S.C. § 8336(d) (Supp. II, 1965–66).

██ ██ The regulations of the Department of Agriculture, plaintiff's former employing agency, provide an easy answer to the issue in this case. They specify that "[s]eparations for failure to accept new assignment are considered involuntary for retirement purposes." Department of Agriculture Personnel Manual, ch. 715, subch. 3–1a(4). This fits plaintiff's case exactly.

We are aware that the regulations of the Civil Service Commission provide that "[r]efusal by an employee to accept * * * reassignment *ordinarily* results in removal for cause or voluntary resignation." Federal Personnel Manual Supp. 831–1, S11–2b (Oct. 28, 1966) (emphasis supplied). But the provision is flexible and, as pointed out in Browning v. United States, 373 F.2d 915, 179 Ct.Cl. 439 (1967), the Commission's regulations "at least do not prohibit" the result indicated by the Department of Agriculture regulation. 373 F.2d at 920. *Id.* at 447. In our view, the Department of Agriculture regulation is valid and, since it fits the present case so precisely, is controlling. *See* Browning v. United States, *supra.*

In *Browning* the plaintiff, also an employee of the Department of Agriculture, was separated for failure to accept reassignment. In that case, too, plaintiff's refusal to accept reassignment was due to strong personal and family reasons. Indeed, the only discernible factual difference between that case and this is

---

"Therefore, I must decline the reassignment and avail myself of any appeal or retirement rights I may have. In the meantime, I remain available for duty here, and await your instructions as to what specific duties you wish me to perform. I believe the provisions of FPM 752–5, Subchapter 2, Paragraphs 2–4 will be applicable."

that, in *Browning*, the plaintiff was never actually reassigned and no charges were brought by the Department. In *Browning*, we held, over the defendant's contention that the separation was voluntary, that the plaintiff had been involuntarily separated within the meaning of the Department's regulation and was, therefore, entitled to the annuity.

In the present case the defendant has shifted the focus of its defense and now argues that, since Mr. Pauley was actually reassigned and later charged after refusing to accept reassignment, he was removed for cause. Under the Department's regulation, however, it makes no difference whether the separation for failure to accept a new assignment occurs without charges being preferred (as in *Browning*) or as a result of charges (as in the present case). The broad terms of that regulation cover both types of separation, and no distinction is made between them.

Defendant maintains that the Civil Service Commission, consistently and for many years, has interpreted the statutory language "removal for cause on charges of misconduct or delinquency" to include failure to report to a reassigned position.[2] Whether this is so is immaterial in this case because the Department of Agriculture regulations and the *Browning* case are controlling here.

Accordingly, defendant's cross-motion for summary judgment is denied, plaintiff's motion for summary judgment is granted, judgment is entered for plaintiff, and the case is returned to the trial commissioner for a determination as to the amount of liability pursuant to Rule 131(c).

---

2. The court does not reach the issue, but the writer of this opinion thinks it is important to note his view that Congress, in using the terms "misconduct" and "delinquency," never intended that they should apply in circumstances, such as those present in this case, where a federal employee of many years service feels compelled, for strong personal and family reasons, to decline geographic reassignment. Those words connote reprehensible acts, and loose use of them by the Civil Service Commission is a practice which can, and presumably does, result in unjust and misleading indictments of innocent persons.