# United States Court of Appeals for the Federal Circuit

05-3291


BRIAN J. ELDREDGE,

                                                Petitioner,

v.


DEPARTMENT OF THE INTERIOR,

                                                Respondent.


W. Craig James, Mauk & Burgoyne, of Boise, Idaho, argued for petitioner.

Douglas K. Mickle, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter Keisler, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director.


Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3291

BRIAN J. ELDREDGE,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

_____

DECIDED: June 16, 2006

_____

Before MICHEL, <u>Chief Judge</u>, SCHALL, and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Brian J. Eldredge ("Eldredge") appeals the decision of the Merit Systems Protection Board (the "Board") denying his request for firefighter retirement credit under the Federal Employees' Retirement System ("FERS"). <u>Eldredge v. Dep't of the Interior</u>, No. SE-0841-04-0127-I-1 (M.S.P.B. May 20, 2005). We vacate and remand.

BACKGROUND

FERS provides enhanced retirement benefits for firefighters. <u>See</u> 5 U.S.C. §§ 8412(d) (2000) (early retirement); 8415(d) (2000) (increased annuity); 8425(b) (2000) (early retirement). Service in both "rigorous" and "secondary" firefighter positions

is creditable toward enhanced firefighter retirement. 5 U.S.C. § 8401(14) (2000).[1] Service in secondary positions is not creditable if there is "a break in service exceeding 3 days," unless it is a "break in employment in secondary positions that begins with an involuntary separation." 5 C.F.R. § 842.803(b)(1)(iii) (2005). The question here is whether two breaks in secondary-position service of more than three days were the result of "involuntary separations."

Eldredge has been employed in firefighting positions by the Department of the Interior ("Interior") since 1977. He began his career as a rigorous firefighter in Mountain Home, Idaho. His last appointment to a rigorous position ended on November 20, 1987. On April 10, 1988, he took a career conditional appointment as a Supervisory Range Technician (Firefighter), GS-455-06, in Bakersfield, California. On April 21, 1991, he voluntarily transferred to a temporary position as a Range Technician, GS-455-07, in Boise, Idaho. The appointment was not to extend beyond December 1, 1991, but was terminated on September 20, 1991. On October 17, 1991, Eldredge was temporarily reappointed to the same position because of an "emergency need due to fire situation." J.A. at 21. This appointment was not to extend beyond November 15, 1991, but was terminated on November 4, 1991. The SF-50s described both terminations as "termination involuntary" due to "lack of work/funds." J.A. at 22. On April 19, 1992, Eldredge was reappointed to the Range Technician position on a career conditional

---

[1] A "rigorous" firefighter position is defined as a position the duties of which "are primarily to perform work directly connected with the control and extinguishment of fires; and . . . are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals . . . ." A "secondary" firefighter is "an employee who is transferred directly to a supervisory or administrative position after performing [rigorous firefighter] duties . . . for at least 3 years." 5 U.S.C. § 8401(14) (2000); 5 C.F.R. § 842.802 (2005).

basis. Eldredge's positions since his April 10, 1988, appointment all have been "secondary" firefighter positions under FERS. 5 U.S.C. § 8401(14)(B).

On September 28, 1994, Interior advised Eldredge that his service in secondary firefighter service (the Range Technician positions) since April 10, 1988, had been approved for enhanced firefighter retirement credit under FERS. On October 20, 1995, Eldredge applied for enhanced retirement credit for his service in rigorous firefighter positions from May 31, 1977, to November 20, 1987. In a June 9, 2003, letter to the Office of Personnel Management ("OPM"), Interior stated that it was reviewing Eldredge's records and requested OPM's opinion as to whether Eldredge's terminations on September 20, 1991, and November 4, 1991, satisfied the definition of "involuntary separation" in 5 C.F.R. § 842.803(b)(1)(iii). On July 28, 2003, OPM rendered an advisory opinion concluding that Eldredge's terminations were not involuntary separations because Eldredge "should have been aware at the beginning of the appointment that the appointment was of limited duration." J.A. at 33. On January 20, 2004, apparently in response to Eldredge's request for clarification of his retirement status, Interior issued a final decision approving firefighter retirement credit for Eldredge's rigorous and secondary service from May 31, 1977, to September 20, 1991. Interior concluded that Eldredge was not eligible for enhanced retirement benefits for his service after September 20, 1991, because his separation from his temporary position on September 20, 1991, was not "involuntary" under the regulation.

Eldredge appealed to the Board. The Administrative Judge affirmed OPM's decision, relying on § 44A2.1-8A of the Civil Service Retirement System ("CSRS") and FERS Handbook for Personnel and Payroll Offices (the "Handbook"). Section 44A2.1-

8A provides that a separation is not "involuntary" if an employee "voluntarily leaves regular long term (career) employment to accept a short term appointment with full knowledge of its early termination." The Administrative Judge concluded that because Eldredge knew that the appointments were temporary when he accepted them, his terminations on September 20, 1991, and November 4, 1991, were not involuntary; thus, under the regulation, he was not entitled to firefighter credit for service after September 20, 1991. The Administrative Judge's decision became final on June 23, 2005.

Eldredge timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I

Firefighters are eligible to retire with an annuity after "completing 25 years of service as a [firefighter]" or "after becoming 50 years of age and completing 20 years of service as a [firefighter] . . . ." 5 U.S.C. § 8412(d). Under 5 C.F.R. § 842.803(b)(1), an employee's service in a secondary firefighter position qualifies for firefighter retirement credit if:

> (i) The employee, while covered under the provisions of 5 U.S.C. [§] 8412(d), moves directly (that is, without a break in service exceeding 3 days) from a rigorous position to a secondary position;
> (ii) The employee has completed 3 years of service in a rigorous position, including any such service during which no FERS deductions were withheld; and
> (iii) The employee has been continuously employed in a secondary position or positions since moving from a rigorous position without a break in service exceeding 3 days, except that a break in employment in secondary positions that begins with an involuntary separation (not for cause), within the meaning of 5 U.S.C. [§] 8414(b)(1)(A),  is not

considered in determining whether the service in secondary positions is continuous for this purpose.

(emphases added).

It is undisputed that Eldredge satisfies subsections (i) and (ii) of the regulation. Subsection (iii) defines "involuntary separation" by reference to 5 U.S.C. § 8414(b)(1)(A). That provision of the statute is not concerned with the early retirement rights of firefighters, but rather defines the circumstances under which federal employees generally subject to FERS may receive an annuity after early retirement. See 5 U.S.C. §§ 8414(b)(1) & (2) (2000). Section 8414(b) states, in pertinent part:

> [A]n employee who . . . <u>is separated from the service involuntarily, except by removal for cause on charges of misconduct or delinquency</u> . . . is not entitled to an annuity under this subsection if the employee has declined a reasonable offer of another position in the employee's agency for which the employee is qualified, and the offered position is not lower than 2 grades (or pay levels) below the employee's grade (or pay level) and is within the employee's commuting area.

5 U.S.C. §§ 8414(b)(1)(A) & (b)(2) (2000) (emphasis added).

Eldredge argues that under the plain language of the statute and regulation, the determination as to whether a separation was involuntary must be made based on the reason for termination. Because his temporary appointments were terminated before they expired, Eldredge insists, the terminations were involuntary. The government argues that OPM's advisory opinion and the Handbook constitute agency interpretations of the term "involuntary separation" in the regulation, and that under OPM's interpretation, Eldredge's knowledge that the appointments were temporary renders the terminations voluntary.

OPM's advisory opinion states:

> The employee should have been aware at the beginning of the appointment that the appointment was of limited duration. Therefore, the move to a time limited appointment was voluntary, and the subsequent termination of the employee on September 20, 1991, was a voluntary separation with regard to 5 C.F.R. [§] 842.803(b)(1)(iii). Similarly, the termination of the employee on November 4, 1991, was also a voluntary separation.

J.A. at 33. Section 44A2.1-8A of the Handbook provides: "A separation is not [an involuntary separation] qualifying for discontinued service retirement if the employee voluntarily leaves regular long-term (career) employment to accept a short-term appointment with full knowledge of its early termination."

The government argues that the advisory opinion and the Handbook are entitled to deference because they contain OPM's interpretation of its own regulation. Normally, this would be true. United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 219 (2001); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Am. Express Co. v. United States, 262 F.3d 1376, 1382 (Fed. Cir. 2001). Here, however, no interpretation of the regulation is required. The regulation defines "involuntary separation" by reference to section 8414(b)(1)(A), an unrelated statutory provision. This case raises a question of statutory, not regulatory, interpretation.

Because we are concerned with statutory interpretation, the issue is whether Chevron deference is owed to the OPM advisory opinion or the Handbook. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984). We conclude that the advisory opinion does not attract Chevron deference. Here, as in Christensen v. Harris County, 529 U.S. 576 (2000), "we [are] confront[ed with] an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking." Id. at 587. The Supreme

Court has made clear that "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference." Id.

The Supreme Court in United States v. Mead Corp., 533 U.S. 218 (2001), clarified the factors to be considered in determining whether a non-regulatory agency interpretation attracts Chevron deference. The question in Mead was whether tariff classification rulings interpreting the Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202 (2000), issued by the United States Customs Service, warranted Chevron deference. The Court observed that: (1) the statute did not contemplate that the rulings would have the force of law; (2) the rulings did not result from notice-and-comment rulemaking; (3) Customs did not regard a ruling as binding on anyone but the importer to whom it was issued; and (4) "46 different Customs offices issue 10,000 to 15,000 [classification rulings] each year." See id. at 231-34. On the basis of these factors, taken together, the Court held that the rulings did not warrant Chevron deference because they were not issued in the exercise of Customs's "delegated authority . . . to make rules carrying the force of law." Id. at 226-27. Rather, the Court concluded that the rulings were "best treated like 'interpretations contained in policy statements, agency manuals, and enforcement guidelines[,]' . . . . [which] are beyond the Chevron pale." Id. at 234 (quoting Christensen, 529 U.S. at 587).

Here, the advisory opinion is essentially no different from the tariff rulings in Mead. There is no suggestion that it resulted from an exercise of OPM's "delegated authority . . . to make rules carrying the force of law," or that it was binding on other

parties.  <u>Mead</u> thus compels the conclusion that the advisory opinion does not warrant <u>Chevron</u> deference.

The same result obtains with respect to the Handbook under <u>Christensen</u> and <u>Mead</u>.  The Supreme Court in <u>Christensen</u> expressly excluded "interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . which lack the force of law" from <u>Chevron</u> deference.  529 U.S. at 587.  This was reiterated in <u>Mead</u>.  <u>See</u> 533 U.S. at 234.  We conclude that the Handbook is not entitled to <u>Chevron</u> deference.

The government argues that in <u>Nebblett v. Office of Personnel Management</u>, 237 F.3d 1353 (Fed. Cir. 2001), we looked to the prior incarnation of the Handbook to determine whether OPM's interpretation of "involuntary separation" was "reasonable" for <u>Chevron</u> purposes.  In <u>Nebblett</u>, OPM urged an interpretation of "involuntary separation" that excluded separations provoked by allegedly unlawful agency action.  We held that OPM's interpretation was "reasonable" based in part on Handbook provisions.  <u>Id.</u> at 1358.  But we do not view <u>Nebblett</u> as having afforded <u>Chevron</u> deference to the Handbook.

II

The advisory opinion and Handbook could nevertheless attract deference under the Supreme Court's decision in <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), but only in proportion to their "power to persuade."  <u>Id.</u> at 140; <u>see</u> <u>Mead</u>, 533 U.S. at 235; <u>Christensen</u>, 529 U.S. at 587.  We conclude that <u>Skidmore</u> deference is not warranted.

Neither the advisory opinion nor the Handbook cites any authority for the proposed awareness interpretation of "involuntary separation."  Section 8414(b)(1)(A)

excludes from "involuntary separations" "separat[ions] . . . by removal for cause on charges of misconduct or delinquency." On its face, the statute (by excluding terminations for cause) shows that the question of whether a separation was involuntary turns on the reason for the termination, not whether the employee knew of the possibility of termination at the time he took the job.[2]

Moreover, the Handbook itself focuses on the reasons for the termination, recognizing as involuntary "any separation against the will and without the consent of the employee other than a separation for cause on charges of misconduct or delinquency[,] [for example,] . . . Reduction-in-force (RIF); Abolishment of position; Lack of funds; Expiration of incumbent's term of office;" and so forth. Handbook § 44A1.1-2 (1998). We and our predecessor court have previously assumed that the Handbook (or its predecessor) accurately states the general rule as to whether a separation is involuntary for purposes of the closely related provision 5 U.S.C. § 8336(d), which deals with CSRS retirement.[3]

Appointments, temporary or permanent, may be terminated for a variety of reasons including, for example, reductions in force. The government's argument,

---

[2] There is also no suggestion here that Eldredge, in taking the temporary appointments, was attempting to manipulate the statutory scheme. The Handbook's exclusion of temporary appointments is intended to address the situation in which "the short term employment was arranged solely to create title to an annuity . . . ." Handbook § 44A2.1-8B (1998). Here, Eldredge accepted the first temporary appointment because "the [Bakersfield] District Fire Management Officer had openly expressed his hostility toward me . . . ." J.A. at 26. He took the second temporary appointment at the agency's request. Eldredge intended at all times to "continue[ ] my career in the firefighting line of work." Id.

[3] See, e.g., Yarbrough v. Office of Pers. Mgmt., 770 F.2d 1056, 1059 (Fed. Cir. 1985); Pauley v. United States, 440 F.2d 426, 428 (Ct. Cl. 1971); Patterson v. United States, 436 F.2d 438, 439-40 (Ct. Cl. 1971); Browning v. United States, 373 F.2d 915, 918-19 (Ct. Cl. 1967) (addressing section 8336(d)'s predecessor, 5 U.S.C. § 2256(d)).

carried to its logical conclusion, would appear to require treating as voluntary a termination due to reduction in force if the employee knew in advance that such a termination might occur.  We decline to adopt such a counterintuitive reading of the statute.

Here, Eldredge's temporary appointments were terminated before they expired, and his separations were involuntary.[4]  Therefore, Eldredge satisfies the regulatory requirements for firefighter retirement credit for his service since September 20, 1991. If the government thinks that this result is undesirable as a matter of public policy, the remedy is an amendment to the regulation, not an interpretation of the regulation and the statute to which it refers that is contrary to the plain language.

## CONCLUSION

The Board's decision is

VACATED and REMANDED for calculation of the appellant's retirement credit.

## COSTS

No costs.

---

[4]        We do not decide whether, under the statute and existing precedent, a separation upon expiration of the term of a temporary appointment is voluntary or involuntary.